JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
STEPHANIE G. HERRERA (State Bar No. 313887)
stephanie.herrera@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

BETHANY W. KRISTOVICH (State Bar No. 241891)
bethany.kristovich@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

*Attorneys for Defendants*
*OpenAI Foundation, OpenAI OpCo, LLC,*
*OpenAI Group PBC, and Samuel Altman*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

MARK STACEY, individually, and as successor-in-interest to decedent SHANNDA AVIUGANA-DURAND,

Plaintiff,

vs.

SAMUEL ALTMAN, an individual, OPENAI FOUNDATION, a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, and OPENAI GROUP PBC, a Delaware public benefit corporation,

Defendants.

Case Nos. 3:26-cv-03701-JSC
3:26-cv-03702-JSC
3:26-cv-03703-JSC
3:26-cv-03704-JSC
3:26-cv-03705-JSC
3:26-cv-03706-JSC
3:26-cv-03707-JSC

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOR FORUM NON CONVENIENS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Date: October 8, 2026
Time: 10:00 a.m.
Judge: Hon. Jacqueline S. Corley
Crtrm.: 8th (19th Floor)

[Filed concurrently: Declaration of Bethany W. Kristovich; Declaration of Julia K. Lockhart; (Proposed) Order]

TIMM SCHOFIELD AND REBEKAH SCHOFIELD, individually, and as successors-in-interest to decedent E.S., a minor,

Plaintiffs,

vs.

SAMUEL ALTMAN, an individual, OPENAI FOUNDATION, a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, and OPENAI GROUP PBC, a Delaware public benefit corporation,

Defendants.

ABEL MWANSA, SR. and BWALYA CHISANGA, individually, and as successors-in-interest to decedent A.M., a minor,

Plaintiffs,

vs.

SAMUEL ALTMAN, an individual, OPENAI FOUNDATION, a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, and OPENAI GROUP PBC, a Delaware public benefit corporation,

Defendants.

M.G., a minor, by and through her next friend CIA EDMONDS, and CIA EDMONDS, an individual,

Plaintiffs,

vs.

SAMUEL ALTMAN, an individual, OPENAI FOUNDATION, a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, and OPENAI GROUP PBC, a Delaware public benefit corporation,

Defendants.

| | |
|---|---|
| LORI HAYER, individually, and as successor-in-interest to decedent Z.B., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>SAMUEL ALTMAN, an individual, OPENAI FOUNDATION, a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, and OPENAI GROUP PBC, a Delaware public benefit corporation,<br><br>Defendants. | |
| SARAH LAMPERT, individually, and as successor-in-interest to decedent T.L., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>SAMUEL ALTMAN, an individual, OPENAI FOUNDATION, a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, and OPENAI GROUP PBC, a Delaware public benefit corporation,<br><br>Defendants. | |
| LANCE YOUNGE and JENNIFER GEARY,<br><br>Plaintiffs,<br><br>vs.<br><br>SAMUEL ALTMAN, an individual, OPENAI FOUNDATION, a Delaware corporation, OPENAI OPCO, LLC, a Delaware limited liability company, and OPENAI GROUP PBC, a Delaware public benefit corporation,<br><br>Defendants. | |

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION AND MOTION TO DISMISS FOR FORUM NON ONVENIENS ........... 8

MEMORANDUM OF POINTS AND AUTHORITIES ........... 8

I. INTRODUCTION ........... 8

II. BACKGROUND ........... 10

A. The Tumbler Ridge Tragedy ........... 10

B. Van Rootselaar's Troubled History and Mental Health ........... 11

C. Van Rootselaar's Access to Firearms ........... 12

D. Canadian Law Enforcement's Return of Firearms to Van Rootselaar's Home ........... 13

E. The Canadian Response to the Shooting ........... 13

F. After One Plaintiff Initially Sues in British Columbia and Discontinues, All Plaintiffs File Suit in California ........... 14

III. ARGUMENT ........... 15

A. British Columbia Is an Available and Adequate Forum ........... 15

B. The Balance of Private and Public Interest Factors Favors Dismissal ........... 16

1. The Private Interest Factors Weigh in Favor of British Columbia ........... 16

2. British Columbia's Predominant Interest and Considerations of International Comity Favor a British Columbia Forum ........... 20

3. Plaintiffs' Choice of Forum Is Entitled to Limited Deference ........... 26

IV. CONCLUSION ........... 27

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Air Crash at Madrid, Spain, on August 20, 2008*,
893 F. Supp. 2d 1020 (C.D. Cal. 2011)....................19

*In re Air Crash Over Mid-Atlantic on June 1, 2009*,
760 F. Supp. 2d 832 (N.D. Cal. 2010)....................18

*Andersen v. Stability AI Ltd.*,
No. 23-cv-00201-WHO (LJC), 2026 WL 1244041 (N.D. Cal. May 6, 2026)....................18

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011)....................15, 19

*Doud v. Kochai*,
No. C 12-6061 MEJ, 2013 WL 5313701 (N.D. Cal. Sept. 23, 2013)....................17

*Etaliq, Inc. v. Cisco Sys., Inc.*,
No. CV 11-3672 GAF, 2011 WL 13220445 (C.D. Cal. July 20, 2011)....................23

*Gallego v. Garcia*,
No. 07CV1185-MMA (LSP), 2010 WL 2354585 (S.D. Cal. June 9, 2010)....................18

*Great Bowery Inc. v. Valnet, Inc.*,
812 F. Supp. 3d 338 (S.D.N.Y. 2025)....................16

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947)....................15, 19, 25

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)....................23

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001).................... 8, *passim*

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012), overruled on other grounds by *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022)....................24

*Ministry of Health, Province of Ont., Can. v. Shiley Inc.*,
858 F. Supp. 1426 (C.D. Cal. 1994)....................21

*Nibirutech Ltd v. Jang*,
No. C 14-3091 PJH, 2015 WL 831465 (N.D. Cal. Feb. 23, 2015)....................17

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .......... 10, *passim*

*Quackenbrush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) .......... 15

*Seguros Universales, S.A. v. Microsoft Corp.*,
32 F. Supp. 3d 1242 (S.D. Fla. 2014) .......... 23

*Silverlake Park LLC v. Stewart Title Guar. Co.*,
No. 2:17-cv-03291-CAS-AGRx, 2025 WL 241118 (C.D. Cal. Jan. 10, 2025) .......... 23

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .......... 15

*Sociedad Concesionaria Metropolitana Du Salud S.A. v. Webuild S.P.A.*,
No. 3:24-CV-02043 (SVN), 2026 WL 84524 (D. Conn. Jan. 12, 2026) .......... 23

*Stromberg v. Qualcomm Inc.*,
14 F.4th 1059 (9th Cir. 2021) .......... 23

*Umeda v. Tesla Inc.*,
No. 20-cv-02926-SVK, 2020 WL 5653496 (N.D. Cal. Sept. 23, 2020) .......... 18

*Vivendi SA v. T-Mobile USA Inc.*,
586 F.3d 689 (9th Cir. 2009) .......... 26

**STATE CASES**

*Bullis v. Sec. Pac. Nat'l Bank*,
21 Cal. 3d 801 (1978) .......... 22

*Gebala v. OpenAI Found.*,
No. S-261734 (B.C. S.C. Mar. 9, 2026) .......... 14

*Hernandez v. Burger*,
102 Cal. App. 3d 795 (1980) .......... 25

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) .......... 24

**CANADA AND BRITISH COLUMBIA CASES**

*Andrews v. Grand & Toy Alberta Ltd.*,
[1978] 2 S.C.R. 229 (Can.) .......... 24

*Funk v. White*,
2025 CanLII 2001 (Can. B.C. S.C.) .......... 24

**FEDERAL STATUTES**

28 U.S.C. § 1782 .....18

**STATE STATUTES**

Cal. Welf. & Inst. Code § 8103(f)(1)(A).....22

**CANADA AND BRITISH COLUMBIA STATUTES**

B.C. Supreme Court Civil Rule 22-5 (8).....25

Firearms Act, S.C. 1995, c. 39 (Can.) .....22

Mental Health Act, R.S.B.C. 1996, c. 288, s. 22.....11, 12

School Act, R.S.B.C. 1996, c. 412, s. 3 .....11

**TREATISES**

Judicial Council of California Civil Jury Instructions No. 413 (2026).....22

**NOTICE OF MOTION AND MOTION TO DISMISS FOR FORUM NON CONVENIENS**

PLEASE TAKE NOTICE that on October 8, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, Defendants OpenAI Foundation, OpenAI OpCo, LLC, OpenAI Group PBC, and Samuel Altman (collectively, "Defendants" or "OpenAI") will and hereby do move to dismiss these actions based on forum non conveniens.

The Court should dismiss based on forum non conveniens because British Columbia, Canada, is an adequate alternative forum and the private and public interest factors strongly favor a British Columbia forum. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142–43 (9th Cir. 2001). Defendants' motion is based on this Notice of Motion and Motion and accompanying Memorandum; the Declaration of Bethany W. Kristovich and exhibits thereto; the Declaration of Julia K. Lockhart and exhibits thereto; all pleadings on file in this matter; and such argument as the Court may consider in connection with this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On February 10, 2026, at Tumbler Ridge Secondary School in British Columbia, Canada, a deeply troubled British Columbia teenager opened fire, killing and injuring British Columbia residents. OpenAI's thoughts remain with the victims, their families, and the entire community in the wake of this unspeakable tragedy.

Plaintiffs, all British Columbia residents, have sued OpenAI, alleging that ChatGPT caused the shooter's horrific crime and that OpenAI should have warned Canadian law enforcement about the shooter eight months before the shooting. Defendants will address the merits of these legal claims in the appropriate forum, but the threshold question is where Plaintiffs' claims should be heard. That is the focus of this motion. Because California is not the most appropriate forum for claims by British Columbians attacked by a British Columbian in British Columbia, the Court should dismiss these actions for forum non conveniens.

British Columbia plainly is an available and adequate alternative forum, so the key questions under the forum non conveniens doctrine are where the parties can access evidence and which forum has the greater interest. The answer to both is British Columbia for several reasons:

First, ***the parties' access to evidence*** favors British Columbia. In addition to Plaintiffs, third-party witnesses and critical causation evidence are in British Columbia and beyond the Court's compulsory process. These third parties include Canadian law enforcement, which visited the shooter's home multiple times, seized guns, and returned them before the shooting, and which have collected evidence from Van Rootselaar's non-public social media and online accounts, and presumably any devices she used to access those accounts; British Columbia mental health care providers, who involuntarily hospitalized and released the shooter multiple times before the shooting; local government and school officials, who knew the shooter had behavioral problems and had dropped out of school yet apparently did not intervene; and many other individuals who were aware of her serious mental health problems, violent history, and access to guns. Litigating in California will materially impair the availability of highly relevant evidence in this case. By contrast, OpenAI will produce documents electronically to Plaintiffs, regardless of forum, and OpenAI's witnesses who reside outside Canada will not resist testifying at a British Columbia trial on the basis that the case is pending in British Columbia.

Second, ***British Columbia has a uniquely strong sovereign interest*** in having these actions resolved at home—an interest that goes well beyond the typical interest in adjudicating claims arising from injuries that occur within a forum's borders. Plaintiffs' claims will require a factfinder to assess the role of Canadian law enforcement, firearms regulations, and British Columbian institutions in the events that preceded the shooting. This will include, among other issues: why British Columbia's mental health system repeatedly released the shooter from involuntary hospitalizations without ongoing supervision, including after she committed arson; why Canadian law enforcement issued and permitted the shooter to retain a firearms license despite her psychiatric and criminal history; why Canadian law enforcement returned guns to the shooter's home before the shooting; the broader role of digital services and online safety in Canada; and the scope of tort liability.

Indeed, these same questions are actively being examined in Canada. Canadian law enforcement is investigating the shooting; the Attorney General of British Columbia has stated that she intends to pursue legal action, including against OpenAI; and the British Columbia Chief

Coroner will soon begin a public inquest examining, and resulting in recommendations regarding, important local policy and systemic issues, including the British Columbia public health system, mental health resources and mental health legislation, British Columbians' access to firearms, and the role of local law enforcement. The shooting has also generated extensive public debate across Canada about the performance of these institutions. These actions will overlap with Canada's ongoing examination of its own institutions and policy choices. British Columbia courts and jurors are best positioned to address these issues, and these unique British Columbian interests outweigh California's generalized interest in adjudicating claims against companies that happen to be headquartered in the state.

Because British Columbia is an available and adequate forum, and the balance of private and public interests strongly favors litigating there, the Court should dismiss for forum non conveniens. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22, 257 (1981); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142–43 (9th Cir. 2001).

## II. BACKGROUND

Plaintiffs' claims will entail a wide-ranging inquiry into the events and circumstances that preceded the Tumbler Ridge tragedy because causation and comparative fault will be core issues in the litigation. The locus of that inquiry will be British Columbia, where numerous third-party witnesses—including Canadian law enforcement, British Columbia mental health care providers, and others in the Tumbler Ridge community who were aware of the shooter's issues—and their evidence can be found.

### A. The Tumbler Ridge Tragedy

On February 10, 2026, eighteen-year-old Jesse Van Rootselaar[1] shot and killed her mother and eleven-year-old half-brother at their home in Tumbler Ridge, a small community about a 13-hour drive north of Vancouver. She then drove to Tumbler Ridge Secondary School and opened fire, killing six people, seriously wounding two others, and taking her own life. It was one of the deadliest mass shootings in Canadian history. *See* Stacey Compl. ¶ 1.

[1] Van Rootselaar was a transgender woman. This brief uses her preferred pronouns (she/her/hers).

Van Rootselaar's victims include Shannda Aviugana-Durand, an education assistant, and five students: A.M., Z.B., T.L., E.S., and K.S. Stacey Compl. ¶ 25; Mwansa Compl. ¶ 25; Hayer Compl. ¶ 27; Lampert Compl. ¶ 25; Schofield Compl. ¶ 25; Younge Compl. ¶ 28. Plaintiff M.G. is a student who survived but suffered serious injuries. M.G. Compl. ¶ 26. The Plaintiffs in these actions represent victims killed or injured at the school. *Id.*

### B. <u>Van Rootselaar's Troubled History and Mental Health</u>

Van Rootselaar had a turbulent family life. In custody proceedings, the Supreme Court of British Columbia found that she and her siblings "led an almost nomadic life" and urged her mother to furnish "some emotional[] . . . semblance of stability." Kristovich Decl. Ex. 1, paras. 8, 9. The court also determined that Van Rootselaar's mother had engaged in "reprehensible conduct" by failing to tell Van Rootselaar's biological father of these repeated relocations. *Id.*, para. 47. Records of these and other court proceedings involving Van Rootselaar and her family are in British Columbia.

Van Rootselaar attended Tumbler Ridge Secondary School until roughly 2022, when she dropped out around age fourteen. *Id.* Ex. 10 at 4. Although the British Columbia government was obligated to ensure her ongoing education, *see* School Act, R.S.B.C. 1996, c. 412, s. 3, it appears that no one intervened to keep her in school. There also are suggestions that the school system knew of her behavioral problems as early as 2015. Kristovich Decl. Ex. 23 at 8. Van Rootselaar's school records, and all persons who were aware of her behavioral problems and that she had dropped out, are in British Columbia.

In 2023, Van Rootselaar deliberately set fire to her house. Kristovich Decl. Ex. 13 at 2. Neighbors told reporters that she was "trying to kill [her] own family," including her mother and younger siblings. *See id.* "[E]veryone on the street saw the blaze." *Id.* All witnesses to this violent crime, and local law enforcement's response, are in British Columbia.

After the arson, Van Rootselaar was involuntarily hospitalized under British Columbia's Mental Health Act, which required her doctors to certify that she had a mental disorder and, among other things, required care in a designated facility to prevent her substantial mental or physical deterioration or for her protection or the protection of others. *See* Mental Health Act,

R.S.B.C. 1996, c. 288, s. 22 ("Involuntary admissions"); Kristovich Decl. Ex. 14 at 2–3. She was involuntarily hospitalized under this Act on multiple occasions, and each time, British Columbia mental health care providers released her without apparent ongoing supervision. *See* Kristovich Decl. Ex. 14 at 2–3. After the shooting, experts criticized systemic "gaps" in British Columbia's mental health system and called for "the overlap between firearm and mental health laws . . . to be thoroughly examined." *Id.* at 3. Witnesses and evidence concerning the British Columbia health system's interactions with Van Rootselaar, including her repeated involuntary hospitalizations and releases, are in British Columbia.

**C. Van Rootselaar's Access to Firearms**

Despite her arson and mental health crises, Van Rootselaar had ready, publicly-known access to firearms. In the year after her arson and related psychiatric hospitalization, her mother publicly posted a photograph of an open household gun cabinet containing at least seven guns—including multiple semi-automatic rifles and shotguns. *Id.* Ex. 16 at 1–3. Her mother promoted similar content posted by Van Rootselaar, inviting Facebook friends to watch her child's YouTube videos about "hunting, self-reliance, [and] guns." *See id.* Ex. 7 at 2.

Van Rootselaar reportedly obtained a firearms license at age thirteen. *See id.* Ex. 15 at 1. Although her license expired in 2024, she continued to have access to firearms in her home. *Id.* at 2. Nor was registration required as to the weapons shown in the photograph posted by her mother. *Id.* Ex. 16 at 2. The Royal Canadian Mounted Police ("RCMP") oversees firearms licenses and registration in British Columbia. *See* Royal Canadian Mounted Police, Firearms, https://rcmp.ca/en/firearms. Evidence concerning Van Rootselaar's firearms license—and her ongoing access to firearms after her license expired, after her arson, and after repeated involuntary psychiatric hospitalizations—is in British Columbia.

After the shooting, British Columbia's government announced new firearms regulations to address what it called "gaps in gun laws." Kristovich Decl. Ex. 4 at 1. Evidence about any "gaps in gun laws" that led to Van Rootselaar's continued access to firearms is in British Columbia.

**D. <u>Canadian Law Enforcement's Return of Firearms to Van Rootselaar's Home</u>**

According to Plaintiffs, Canadian law enforcement—the RCMP—knew Van Rootselaar was armed and unstable before the shooting. Plaintiffs allege that "the Shooter was already known to local law enforcement before the attack," that "Canadian authorities had visited [her] residence multiple times in connection with mental health concerns," and that authorities "had temporarily removed firearms from the home." *See* Stacey Compl. ¶ 34; M.G. Compl. ¶ 35. Plaintiffs further allege that, at the time of the shooting, the RCMP "already had an open file" on Van Rootselaar and "had already recognized the Shooter as someone whose access to firearms warranted immediate intervention." *See* Stacey Compl. ¶ 34.

About "[t]wo years" before the shooting, the RCMP seized firearms from Van Rootselaar's home but returned the weapons to the home at an unspecified later point in time. Kristovich Decl. Ex. 11 at 5; *id.* Ex. 8 at 3. Although the RCMP has stated that *some* firearms used in the shooting had not been previously seized by the RCMP, it has been notably silent as to the others. *See id.* Ex. 2 at 2. That the RCMP chose to return weapons to Van Rootselaar's home has "angered [Tumbler Ridge] residents, some of whom believe more could have been done to stop the attack." *Id.* Ex. 12 at 4. Law enforcement witnesses and evidence concerning the RCMP's "open file" on Van Rootselaar and the seizure and return of guns to Van Rootselaar's home are in British Columbia.

**E. <u>The Canadian Response to the Shooting</u>**

Authorities in British Columbia continue to investigate the shooting. The RCMP has confirmed an ongoing criminal investigation and it has collected digital and physical evidence, including "data from *multiple* social media and online accounts" belonging to Van Rootselaar. *Id.* Ex. 6 at 1 (emphasis added). All evidence the RCMP has collected from Van Rootselaar's non-public social media and online accounts, and presumably any devices she used to access those accounts, is in British Columbia.

The British Columbia Chief Coroner has directed a coroner's inquest to publicly review the circumstances surrounding the deaths, assess systemic and procedural issues, and make evidence-based recommendations aimed at preventing similar incidents in the future. *Id.* Ex. 3

at 1–2. The Chief Coroner has said that the inquest will cover a broad spectrum of issues and will "take a specific focus on mental health services in rural and remote communities, as well as questions around how the weapons used in the shooting were acquired and what role artificial intelligence played." *Id.*; *id.* Ex. 17 at 1.

The Province of British Columbia has publicly stated that it has retained counsel in British Columbia and California "to explore legal options," including potential claims against OpenAI related to the Tumbler Ridge shooting. *See id.* Ex. 5 at 1.

Since February 2026, Canadian media have continuously covered the shooting, the role of British Columbia's public health and safety systems, and the federal and provincial governments' responses. Canadians have raised concerns regarding the British Columbia government "trying to deflect its own culpability" and that "[t]he B.C. justice system and B.C. health system did nothing to flag or prevent the murderer." *See id.* Ex. 20 at 3; *see also id.* Ex. 19 at 2–5.

### F. **After One Plaintiff Initially Sues in British Columbia and Discontinues, All Plaintiffs File Suit in California**

Less than a month after the shooting, Plaintiff M.G. sued Defendants in British Columbia before discontinuing and refiling in this District. *Gebala v. OpenAI Found.*, No. S-261734 (B.C. S.C. Mar. 9, 2026); Lockhart Decl. Ex. A. Her Canadian counsel publicly explained why: to try to avoid Canadian laws that would cap damages. Kristovich Decl. Ex. 21 at 1; *id.* Ex. 22 at 2–4.

On April 29, 2026, M.G. and others filed seven complaints in this District: *Stacey v. Altman*, No. 3:26-cv-03701; *Schofield v. Altman*, No. 3:26-cv-03702; *Mwansa v. Altman*, No. 3:26-cv-03703; *M.G. v. Altman*, No. 3:26-cv-03704; *Hayer v. Altman*, No. 3:26-cv-03705; *Lampert v. Altman*, No. 3:26-cv-03706; and *Younge v. Altman*, No. 3:26-cv-03707. Each Plaintiff resides in British Columbia and invokes the Court's diversity jurisdiction based on their foreign citizenship. *See* Stacey Compl. ¶¶ 14, 20; Schofield Compl. ¶¶ 14, 20; Mwansa Compl. ¶¶ 14, 20; M.G. Compl. ¶¶ 14–15, 21; Hayer Compl. ¶¶ 15–16, 22; Lampert Compl. ¶¶ 14, 20; Younge Compl. ¶¶ 16, 22. On the day of this filing, dozens of additional British Columbians filed new complaints arising from the shooting in this District that will be related to these actions. It appears

that the Court will soon be managing upwards of 30 actions by British Columbians arising from a crime committed by a British Columbian in British Columbia.[2]

Plaintiffs' legal claims—blaming OpenAI for a horrific mass shooting by a deeply troubled teenager after systemic failures by the law enforcement, mental-health care, and educational institutions in her community—are not viable. Nor are the claims against Samuel Altman, who was not personally involved in the June 2025 review of the shooter's ChatGPT account or the decision at that time not to refer her account to Canadian law enforcement. Defendants will address the legal merits of the claims, and the baseless accusations against senior OpenAI leadership, in the ultimate forum. For the purposes of this motion, the key fact is that the bulk of the evidence pertaining to Plaintiffs' claims is in British Columbia.

## III. <u>ARGUMENT</u>

In deciding a motion to dismiss based on forum non conveniens, the Court considers "(1) whether an adequate alternative forum exists[;] and (2) whether the balance of private and public interest factors favors dismissal." *Lueck*, 236 F.3d at 1142–43; *Piper*, 454 U.S. at 254 n.22, 257; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504–09 (1947). The forum non conveniens doctrine recognizes "the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Quackenbrush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)).

British Columbia is an available and adequate alternative forum, and the private and public interest factors overwhelmingly favor dismissal.

### A. <u>British Columbia Is an Available and Adequate Forum</u>

British Columbia plainly is an available and adequate forum. A forum is available and adequate if (1) "the defendant is amenable to process there," *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th Cir. 2011), and (2) it provides "the plaintiff with some remedy for his wrong," *Lueck*, 236 F.3d at 1143.

[2] Once Defendants have been served and these new complaints have been related to these actions, Defendants will also move to dismiss the new complaints for forum non conveniens.

Both requirements are satisfied here. Defendants will consent to service of process and jurisdiction for these lawsuits if they are refiled in British Columbia. *See Piper*, 454 U.S. at 254 n.22. And British Columbia recognizes parallel causes of action for failure to warn and design defect and permits such claims on behalf of a decedent's estate and by certain family members. Lockhart Decl. ¶¶ 3–8. That one Plaintiff initially sued there confirms that British Columbia is an available and adequate forum. *See Great Bowery Inc. v. Valnet, Inc.*, 812 F. Supp. 3d 338, 356 (S.D.N.Y. 2025) (plaintiff's choice to file first in Canada undermined argument that Canada was not adequate forum).

Any argument that British Columbia is not an adequate forum because its law may limit the remedies available to Plaintiffs under British Columbia law would fail as a matter of law. *See* Kristovich Decl. Ex. 22. Unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," the availability of different remedies or a lesser potential recovery does not make a forum inadequate. *Piper*, 454 U.S. at 247–54. For example, the Ninth Circuit in *Lueck* found New Zealand an adequate forum even though its administrative remedial scheme would limit the plaintiffs' potential recovery. 236 F.3d at 1143–45. All that is required is that "[t]he foreign forum . . . provide the plaintiff with some remedy for his wrong." *Id.* at 1143.

### B. <u>The Balance of Private and Public Interest Factors Favors Dismissal</u>

The private and public interest factors strongly favor a British Columbia forum, and under the governing standard, the Court should not defer to Plaintiffs' counsel's choice of forum, including because Plaintiffs can obtain relevant evidence from Defendants in either forum.

#### 1. The Private Interest Factors Weigh in Favor of British Columbia

The private interest factors include "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the costs of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious[,] and inexpensive.'" *Lueck*, 236 F.3d at 1145–46. These factors strongly favor a British Columbia forum.

***Residence of the Parties and the Witnesses.*** Plaintiffs are residents of British Columbia and their evidence is there. *See supra* at pp. 10–11. The same is true for the dozens of additional claimants who filed new complaints arising from the shooting on the day of this filing. Canadian law enforcement who have knowledge of Van Rootselaar's criminal history and access to guns before the shooting, and who have collected physical and electronic evidence relevant to this litigation, are in British Columbia. *See supra* at pp. 11–14. British Columbia mental health care providers who have evidence of her mental health history and treatment, including repeated involuntary psychiatric hospitalizations and releases, are in British Columbia. *See supra* at pp. 11–12. Local government institutions who have knowledge of Van Rootselaar's conduct before the shooting, including behavior issues and dropping out of school, are in British Columbia. *See supra* at pp. 11–13. Members of Van Rootselaar's family and the Tumbler Ridge community who have firsthand knowledge of Van Rootselaar's mental health history, violent behavior, drug use, and access to guns are in British Columbia. *See supra* at pp. 11–13.

***The Forum's Convenience to the Litigants.*** California is not convenient for the third-party witnesses described above, or for Plaintiffs, who all reside in British Columbia. *See supra* at pp. 10–13. Defendants seek dismissal for forum non conveniens even though litigation in British Columbia would be less convenient for them; they are willing to accept inconvenience to ensure access to critical evidence. This factor thus favors dismissal. *See, e.g.*, *Doud v. Kochai*, No. C 12-6061 MEJ, 2013 WL 5313701, at *4 (N.D. Cal. Sept. 23, 2013) (granting dismissal where the balance of factors weighed against plaintiffs' chosen forum, even though defendants were based there and it was "more convenient for [them]" to litigate there); *Nibirutech Ltd v. Jang*, No. C 14-3091 PJH, 2015 WL 831465, at *6 (N.D. Cal. Feb. 23, 2015) (similar; granting dismissal in favor of litigating the case in China rather than California, even though the individual and corporate defendants resided in California and conducted part of the alleged fraud there).

***Access to Physical Evidence and Other Sources of Proof.*** This factor favors a foreign forum when critical evidence is beyond the federal court's compulsory process but parties are willing to make evidence available in the foreign forum. In *Lueck*, the Ninth Circuit affirmed dismissal on forum non conveniens grounds, finding that where evidence was in both the

United States and New Zealand, this factor favored dismissal because the district court could not compel much of the New Zealand evidence, "whereas the parties control, and therefore can bring, all the United States evidence to New Zealand." 236 F.3d at 1146–47. Similarly, in *Umeda v. Tesla Inc.*, the court dismissed claims against Tesla by Japanese plaintiffs arising from a car crash in Tokyo because Tesla could produce evidence in a Japanese action, but it would "be difficult if not impossible for Tesla to compel non-parties to produce evidence located in Japan if the action proceed[ed]" in California. No. 20-cv-02926-SVK, 2020 WL 5653496, at *7 (N.D. Cal. Sept. 23, 2020). Likewise, in *In re Air Crash Over Mid-Atlantic on June 1, 2009*, the court dismissed claims by foreign plaintiffs against American part manufacturers because the imbalance in "access to relevant evidence tip[ped] in favor of dismissal." 760 F. Supp. 2d 832, 844 (N.D. Cal. 2010).

The third-party evidence necessary to test Plaintiffs' causation theory is overwhelmingly located in British Columbia. A federal "district court cannot compel production" of evidence held by Canadian third parties. *Lueck*, 236 F.3d at 1147. Defendants would have to seek such evidence through letters rogatory, a process that is "lengthy and burdensome." *Gallego v. Garcia*, No. 07CV1185-MMA (LSP), 2010 WL 2354585, at *4 (S.D. Cal. June 9, 2010); *see Andersen v. Stability AI Ltd.*, No. 23-cv-00201-WHO (LJC), 2026 WL 1244041, at *2 (N.D. Cal. May 6, 2026) (describing letter-rogatory process for obtaining evidence from third parties in Canada). Defendants would first have to move the Court to issue letters rogatory. *See* 28 U.S.C. § 1782. If the Court issues the letters, Defendants would then have to apply to a British Columbia court to enforce the letters, a time-intensive process in which the court will closely scrutinize the requests and may decline to enforce them. Lockhart Decl. ¶¶ 9–13. Defendants will therefore have to seek British Columbia judicial process even if these actions remain in this District—with no guarantee that the evidence they seek will be compelled—an unnecessary duplication of proceedings across borders that could be avoided by litigating these actions in British Columbia.

Defendants also face a heightened risk of extensive delays and non-enforcement of letters rogatory here because the requested materials will include medical, psychiatric, law enforcement, and government records subject to privacy laws in British Columbia. *Id.* ¶ 14. The ongoing criminal investigation and the pending Coroner's investigation and inquest in British Columbia

may create additional evidentiary complexities in seeking to enforce letters rogatory, including potential restrictions on or delayed access to investigative materials. *Id.* ¶¶ 15–16. A British Columbia court responsible for resolving these cases would be better equipped to navigate these parallel matters and balance laws and policy interests in British Columbia with the parties' discovery needs in the litigation. *Id.* ¶¶ 17–21.

Authorities in British Columbia continue to gather potentially relevant evidence through the RCMP's ongoing criminal investigation and the forthcoming Coroner's investigation and inquest. *See supra* at pp. 13–14. These sources of proof bear directly on what caused the shooting and cannot be replicated by party discovery. And the witnesses who possess that evidence—including British Columbia government officials, mental health care providers, and other third parties—are unlikely to cooperate voluntarily with a California proceeding. That these critical witnesses are outside this Court's subpoena power and accessible only through the time-intensive, duplicative, and discretionary letters rogatory process favors a British Columbia forum. *See Carijano*, 643 F.3d at 1231 (private interest analysis focuses on "the materiality and importance" of the anticipated witnesses' testimony, as well as their "accessibility," "convenience," and "willingness" to testify in the forum).

***Whether Unwilling Witnesses Can Be Compelled to Testify.*** Similar problems will extend to trial testimony. Defendants could not compel live testimony of British Columbian third-party witnesses at a trial in California, leaving Defendants to rely on whatever deposition testimony of British Columbian third parties they may be able to obtain. *See In re Air Crash at Madrid, Spain, on August 20, 2008*, 893 F. Supp. 2d 1020, 1032 (C.D. Cal. 2011). As the Supreme Court recognized in *Gulf Oil*, trying a case "where litigants cannot compel personal attendance and may be forced to try their cases on deposition . . . create[s] a condition not satisfactory to court, jury or most litigants." 330 U.S. at 511. That concern is especially significant here, where the credibility and firsthand knowledge of law enforcement officers, mental health care providers, and Van Rootselaar's family and community members in British Columbia—none of whom can be compelled to testify at a trial in California—will be central to how the jury evaluates the core issues of causation and comparative fault.

By contrast, party evidence would be equally available if these actions proceed in British Columbia. British Columbia courts can compel, Lockhart Decl. ¶ 21, and Defendants will make available, relevant evidence and witness testimony. Defendants will not object to witnesses testifying at a trial of these actions in British Columbia on the ground that they reside outside of British Columbia. And it would not be more burdensome for Plaintiffs to take discovery from Defendants if these actions were pending in British Columbia: the vast majority of Defendants' records are likely to be produced electronically. British Columbia thus offers far greater access to the third-party evidence, without impeding Plaintiffs' access to Defendants' evidence.

***The Costs of Bringing Witnesses to Trial.*** It would be less expensive for Plaintiffs to appear themselves and to bring witnesses concerning their injuries and damages to trial in British Columbia. It would be less expensive for Defendants' own witnesses to appear in California, but far more expensive for Defendants to attempt to compel the many British Columbian third-party witnesses they likely will call to testify at a trial in California. *See supra* at p. 17. This factor favors dismissal as well.

***The Enforceability of the Judgment.*** A British Columbia judgment against Defendants would be enforceable in British Columbia, Lockhart Decl. ¶ 22, just as a California judgment would be enforceable in California. This factor is neutral.

***Practical Problems That Make Trial Easy, Expeditious, and Inexpensive.*** The practical considerations of trial favor British Columbia because litigating there would provide both sides with meaningful access to relevant evidence, while litigating here would impede Defendants' access to third-party evidence that is critical to the issues of causation and comparative fault. *See supra* at pp. 17–19.

The private interest factors therefore weigh decisively in favor of British Columbia.

**2. British Columbia's Predominant Interest and Considerations of International Comity Favor a British Columbia Forum**

The public interest factors include "(1) [the] local interest of [the] lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court;

and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147. These factors likewise strongly favor British Columbia.

***Predominant Local Interest.*** British Columbia—not California—has the predominant local interest in this litigation, as responses to the shooting at every level of Canadian government demonstrate. The RCMP is conducting a criminal investigation, and the British Columbia Chief Coroner will conduct an investigation and a public inquest into the causes and circumstances of the shooting. Kristovich Decl. Ex. 3 at 1–2; *id.* Ex. 6 at 1–2. Canada's Parliament is considering legislation addressing online platforms and AI chatbots, further underscoring Canada's interest. *See, e.g.*, Bill C-34, *The Safe Social Media Act*, Gov. of Can., https://www.canada.ca/en/canadian-heritage/services/safe-social-media-act.html (last modified Aug. 20, 2026). The Attorney General of British Columbia has announced that the Province is exploring potential legal action against Defendants in either California or British Columbia. Kristovich Decl. Ex. 5 at 1–2. Legal action by the Province would further tip the scales toward forum non conveniens dismissal. *See Lueck*, 236 F.3d at 1147 ("existence of . . . related proceedings" in foreign forum favored forum non conveniens dismissal); *Ministry of Health, Province of Ont., Can. v. Shiley Inc.*, 858 F. Supp. 1426, 1441–42 (C.D. Cal. 1994) (claims by Canadian provinces against American companies relating to heart valve defects in Canadian patients belonged in Canada).

Plaintiffs' claims also will require examining the same questions about Canadian and British Columbia institutions and standards that are the subject of ongoing Canadian proceedings; British Columbian courts and jurors are best equipped to consider these institutional and policy issues and to ensure consistency across proceedings related to the shooting. The jury may need to determine, among other questions, whether Canadian law enforcement acted reasonably in returning guns to the home of a mentally unstable teenager who had recently committed arson in an attempt to kill her family and had repeatedly been involuntarily hospitalized under British Columbia's mental health legislation. The standard of care may turn on Canadian and British

Columbia statutes and community practices—which differ from those in California.[3] *See Bullis v. Sec. Pac. Nat'l Bank*, 21 Cal. 3d 801, 809 (1978) ("The standard of care required in a particular circumstance may be based on a statute . . . or the custom and practice in the relevant community."); *see also* Judicial Council of California Civil Jury Instructions (CACI) No. 413 (2026) ("You may consider customs or practices in the community in deciding whether [*name of plaintiff/defendant*] acted reasonably.").

British Columbia's "extremely high" interest in the litigation also is reflected by the "significant attention" the shooting "and its aftermath, including the . . . investigation, the post-investigation activity, and the various legal proceedings," have received in Canadian media. *Lueck*, 236 F.3d at 1147. Canadian reporting has focused on the conduct of Canadian and British Columbia institutions that preceded the shooting, including the RCMP's prior interactions with Van Rootselaar, its return of her guns before the shooting, and the adequacy of the provincial and local mental health system. *See, e.g.*, Kristovich Decl. Ex. 7 at 1–6. That coverage has called for scrutiny of "both the role of AI and the performance of [British Columbia's] public institutions," including potential failures by Canadian law enforcement and public health systems. *Id.* Ex. 19 at 3, 5; *see also id.* Ex. 18 at 1, 4 (calling for "transparency" regarding return of shooter's seized guns, and noting issues concerning health care resources in Tumbler Ridge). These sensitive questions affecting the government and public policy of British Columbia should be considered by courts and jurors in British Columbia, not San Francisco. There is unquestionably "a local interest in having localized controversies decided at home." *Piper*, 454 U.S. at 260.

Undoubtedly, California has an interest in the conduct of companies that, like OpenAI, are headquartered in the state. *See* Stacey Compl. ¶¶ 16–18. But California's generic interest in regulating any resident companies pales in comparison to the palpable interests of British Columbia in adjudicating claims arising from the mass murder of British Columbia residents by a

[3] For example, California prohibits firearm possession for five years following certain involuntary psychiatric holds based on a danger to self or others. *See* Cal. Welf. & Inst. Code § 8103(f)(1)(A). British Columbia does not have a similar brightline prohibition; mental health and behavioral history are merely factors that may be considered in determining eligibility for a firearms license. *See* Firearms Act, S.C. 1995, c. 39 (Can.). Van Rootselaar's serious mental health problems and criminal history did not impact her license status.

British Columbian in British Columbia. *See Piper*, 454 U.S. at 260–61 (American interest in conduct of American manufacturers was outweighed by the interests of the forum where the accident occurred and where most parties and decedents were from).

***Court's Familiarity with Governing Law.*** Plaintiffs' claims also will require examining Canadian and British Columbia laws, which British Columbia courts are best equipped to do. *See Lueck*, 236 F.3d at 1148 n.6 (concluding that likely application of foreign law weighed in favor of dismissal); *Etaliq, Inc. v. Cisco Sys., Inc.*, No. CV 11-3672 GAF (FFMx), 2011 WL 13220445, at *6–7 (C.D. Cal. July 20, 2011) (finding likely application of Canadian law to one claim, as well as the need to "apply Canadian law to 'untangle' . . . complicated choice of law question" on the other claim, weighed in favor of dismissal).

The Court likely will need to instruct the jury on aspects of Canadian and British Columbia law, such as firearm seizure laws and mental health legislation. *See Silverlake Park LLC v. Stewart Title Guar. Co.*, No. 2:17-cv-03291-CAS-AGRx, 2025 WL 241118, at *3 (C.D. Cal. Jan. 10, 2025) (holding that, although California law applied, Texas customs, standards, procedures, and practices were relevant in determining the standard of care in the Texas escrow industry); *see also Sociedad Concesionaria Metropolitana Du Salud S.A. v. Webuild S.P.A.*, No. 3:24-CV-02043 (SVN), 2026 WL 84524, at *9 (D. Conn. Jan. 12, 2026) (recognizing foreign jurisdiction's interest in applying its own laws in case involving complex and novel legal issues). British Columbia courts would be best equipped to do that. *See Seguros Universales, S.A. v. Microsoft Corp.*, 32 F. Supp. 3d 1242, 1251 (S.D. Fla. 2014) (dismissing for forum non conveniens where case would require court "to question and second guess the integrity, viability, and propriety of the Guatemalan justice system").

In addition to relying on British Columbia law to inform the standard of care, the Court will need to determine whether British Columbia or California law applies to each substantive issue in these actions by applying California's three-part government-interest test. *See Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir. 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). This three-pronged test asks (1) whether the relevant laws are the same or different, (2) whether each jurisdiction has an interest in applying its own law such that a

true conflict exists, and (3) which jurisdiction's interests would be more impaired if its law were not applied. *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87–88 (2010).

Starting with the first prong of California's choice-of-law test, although British Columbia and California tort law are similar in many respects, they differ in several important ones, including the measure of recoverable damages. As Plaintiffs have said publicly, one difference is Canada's inflation-adjusted damages cap on non-pecuniary damages in bodily injury cases. *See Andrews v. Grand & Toy Alberta Ltd.*, [1978] 2 S.C.R. 229, 265 (Can.); *Funk v. White*, 2025 CanLII 2001, para. 104 (Can. B.C. S.C.). This and other material differences between the jurisdictions' tort laws will require the Court to proceed with the second and third prongs of the choice-of-law analysis and examine the jurisdictions' respective interests in the application of their laws.

The second prong will require the Court to consider whether each jurisdiction has a true interest in applying its law to the particular issue. With respect to damages, for example, British Columbia has a true interest in the application of Canadian law. As the Canadian Supreme Court has explained, Canada's damages cap promotes uniform compensation among Canadian plaintiffs. *See Andrews*, 2 S.C.R. at 261–64. In creating this cap, the Canadian Supreme Court reasoned that "[t]he monetary evaluation of non-pecuniary losses is a philosophical and policy exercise more than a legal or logical one" and "[t]he award must be fair and reasonable, fairness being gauged by earlier decisions." *Id.* at 261. Accordingly, "[t]he amounts of such awards should not vary greatly from one part of the country to another. Everyone in Canada, wherever he may reside, is entitled to a more or less equal measure of compensation for similar non-pecuniary loss." *Id.* at 263. California's interest in the application of its damages laws is less clear. "California has an interest in regulating those who do business within its state boundaries," but at most has an "attenuated" interest in applying its damages laws to claims of foreign residents for conduct outside of California. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012), overruled on other grounds by *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

If there is a true conflict of interests with respect to a particular issue, the third prong will require the Court to consider which jurisdiction's interests would be more impaired if its laws are not applied. With respect to damages, for example, applying California law to Plaintiffs' claims would undermine Canada's express policy of uniform compensation for Canadian tort victims. And, in general, the location of the injury has the predominant interest for purposes of California's choice-of-law test. *See id.* at 593–94 ("California recognizes that with respect to regulating or affecting conduct within its borders, the place of the wrong"—i.e., the location "where the last event necessary to make the actor liable occurred"—"has the predominant interest." (citation modified)). Any interest that California may have in deterring wrongful conduct within its borders is diminished here because Plaintiffs' injuries occurred in Canada.

*Hernandez v. Burger*, 102 Cal. App. 3d 795 (1980), is instructive. There, a Mexican resident brought a personal injury action in California against California defendants arising from an accident in Mexico. *Id.* at 797. The court nevertheless applied Mexico's damages limitation, reasoning that Mexico's "limitation of the amount recoverable in all likelihood reflect[ed] a balancing and accommodation of competing interests based on the societal values and economic and commercial circumstances prevailing in Mexico," including fostering tourism. *Id.* at 803–04. By contrast, "California has no legitimate interest in the possible deterrent effect of its unlimited recovery rule" based on an accident in Mexico. *Id.* at 800.

***Burden on Court and Local Jurors.*** The burden on this Court and local jurors strongly favors dismissal. Forum non conveniens helps to prevent burdening local courts and juries with litigation that concerns claims asserted by foreign residents or arising from conduct abroad. *See Gulf Oil*, 330 U.S. at 508–09. Proceeding in this forum would require San Francisco jurors to resolve more than 30 lawsuits by British Columbians arising from a mass shooting by a British Columbian in British Columbia. It would also require the Court to manage and coordinate complex proceedings across more than 30 actions (as well as intersecting litigation elsewhere),[4] to

[4] There are procedural mechanisms to coordinate the management of these related cases in British Columbia. *See, e.g.*, B.C. Supreme Court Civil Rule 22-5 (8).

supervise extensive international discovery, and to examine and potentially apply Canadian law to multiple issues. These unnecessary burdens are what the doctrine of forum non conveniens is intended to avoid. *See Piper*, 454 U.S. at 261 (explaining that American interest in a product liability action against an American manufacturer for an accident that occurred abroad and involved foreign victims was "simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here").

***Court Congestion and Costs of Resolving a Dispute Unrelated to This Forum.*** While these last factors may not weigh as heavily as others, the Northern District of California is a congested court by any measure. It saw a significant increase in filings in 2025, and time to trial can be longer than in less congested districts.[5] Litigating Plaintiffs' actions (plus the dozens of additional complaints filed on the date of this motion that will be related to Plaintiffs' actions), is likely to impose significant costs on the Court, as they will require intensive case management, significant motion practice, and likely cross-border discovery disputes.

### 3. Plaintiffs' Choice of Forum Is Entitled to Limited Deference

That Plaintiffs chose to file in California merits limited deference, for two reasons. First, Plaintiffs are foreign residents, and "a foreign plaintiff's choice deserves less deference" under the applicable legal standard because the assumption that the chosen forum is convenient for a foreign plaintiff is "much less reasonable." *Piper*, 454 U.S. at 255–56; *see also Lueck*, 236 F.3d at 1145 ("the showing required for dismissal is reduced" for foreign plaintiffs). Second, a plaintiff's chosen forum is "entitled to little deference" where there are signs the forum was selected for strategic reasons. *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d 689, 694–95 & n.10 (9th Cir. 2009).

Here, one Plaintiff initially filed claims in British Columbia—her home forum and the location of the underlying events—before discontinuing that action and refiling in California, expressly to attempt to avoid what her counsel deemed less favorable law. *See supra* at p. 14.

[5] *See* U.S. District Courts, Federal Court Management Statistics–Profiles (Dec. 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf (reflecting an increase of 1,424 filings in 2025 from the year prior).

## IV. CONCLUSION

The Court should dismiss these actions for forum non conveniens.

DATED: September 2, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Bethany W. Kristovich*
BETHANY W. KRISTOVICH
Attorneys for Defendants
OpenAI Foundation, OpenAI OpCo, LLC,
OpenAI Group PBC, and Samuel Altman